# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 27, 2010

## STATE OF TENNESSEE v. BRIAN L. TUNE

**Appeal from the Criminal Court for Loudon County**
**No. 2007-CR-62     E. Eugene Eblen, Judge**

_____

**No. E2009-01619-CCA-R3-CD - FILED DECEMBER 3, 2010**

_____

The Defendant, Brian L. Tune, was charged with driving under the influence (DUI), second offense. Following the Loudon County Criminal Court's denial of his motion to suppress the breath alcohol test results, the Defendant pled guilty to DUI, first offense, a Class A misdemeanor. Pursuant to the plea agreement, the trial court sentenced the Defendant to 11 months and 29 days in the county jail suspended to a community based alternative sentence. Pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure, the Defendant sought to reserve a certified question of law challenging the breath alcohol test results. However, we conclude the certified question is not dispositive. We also note that the Defendant failed to file a timely notice of appeal and provides no reason to waive the timely filing of the notice of appeal. The appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal is Dismissed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Michael W. Ritter, Oak Ridge, Tennessee, attorney for the appellant, Brian L. Tune.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophie S. Lee, Assistant Attorney General; Russell Johnson, District Attorney General; and Frank A. Harvey, Assistant District Attorney General, attorneys for the appellee, State of Tennessee.

## OPINION

At the preliminary hearing, Deputy T.J. Scarborough of the Loudon County Sheriff's Department testified that on July 29, 2006, he received a call regarding an accident on I-75

Southbound near mile-marker 83. When he arrived, he found the Defendant and another man outside of a vehicle. The Defendant told Deputy Scarborough that he was driving when he "lost control of [the] vehicle and hit the side of a bridge." While talking to the Defendant, Deputy Scarborough "smell[ed] a strong odor of an alcoholic beverage on [the Defendant's] person[] and noticed [that the Defendant] was unsteady on his feet." He also noticed that the Defendant's speech was "slurred." When asked if he had had anything to drink, the Defendant told Deputy Scarborough that he "had a couple of drinks at dinner." At that point, Deputy Scarborough administered several field sobriety tests.

The Defendant was asked to complete the one-legged stand test and the nine-pace, heel-to-toe test. Deputy Scarborough told the Defendant to hold his leg "six to eight inches" above the ground for ten seconds; however, the Defendant "put[] his foot on the ground." While performing the nine-pace, heel-to-toe test, the Defendant "stumbled." Because he was concerned for the Defendant's safety, he "stopped doing all the coordination field sobriety tests." The Defendant was asked to recite his A-B-Cs but was unable to complete that task as well. Deputy Scarborough then advised the Defendant that he was too impaired to drive and arrested the Defendant for DUI.

Once the Defendant was transported to the jail, Deputy Scarborough read the Defendant the implied consent law. The Defendant agreed to take a breathalyzer test, and Deputy Scarborough advised the Defendant that they would "have to wait 20 minutes" before he could use the intoximeter machine. Deputy Scarborough testified that the 20-minute waiting period is used to "make sure . . . he's okay as far as . . . he's . . . not injured, sick, passed out . . . anything like that." After the 20-minute waiting period, the Defendant "submitted a breath sample" into the intoximeter machine, which indicated that the Defendant's blood alcohol content was .16. Deputy Scarborough also checked the Defendant's driving history and found that the Defendant had been convicted in Hamilton County of DUI on July 19, 2004.

On cross-examination, Deputy Scarborough admitted that his interaction with the Defendant was not captured on videotape because he was driving a "part-time" car that did not have a videocamera and that he did not take any field notes even though he was trained to take field notes. He also admitted that the Defendant's vehicle was "totally destroyed" and that he was initially called to respond to a "wreck with injury." He noted that the Defendant's windshield was cracked, that the air bag was deployed, and that the Defendant had a scratch on his head. However, he cancelled the emergency medical responders because the Defendant refused medical treatment at the scene of the accident.

Contrary to his earlier testimony in which he stated that he told the Defendant to hold his leg six to eight inches off the ground, Deputy Scarborough stated that he told the

Defendant to hold his foot eight to ten inches off the ground while performing the one-legged stand test. He admitted that six to eight inches was an incorrect instruction and that had he incorrectly instructed the Defendant at the scene, the test would have been invalid. When asked how the Defendant appeared, he stated that the Defendant had "glassy eyes, glassy, bloodshot eyes" in addition to the Defendant's slurred speech and unsteadiness.

Relative to his administering the intoximeter test, Deputy Scarborough admitted that he did not know the written procedures promulgated by the Tennessee Bureau of Investigation and that he could not recall how many steps were in the written procedures. He stated that he used the mouthpiece that was supplied for the machine, but he was unable to recall the name of the mouthpiece. When asked if he knew when the machine was last calibrated, he stated that the machine "does a self-calibration every time you type a new name into it" and that he did not specifically remember the last time a technician came and calibrated the machine by hand. At the conclusion of the hearing, the court found that there was "sufficient proof in the record on the basis of the requirements for preliminary examination" and bound the case "over to the Loudon County grand jury."

The Defendant was subsequently indicted for DUI and moved to suppress the results from the intoximeter machine. At the suppression hearing, Special Agent Forensic Scientist Dave Ferguson of the Knoxville Regional Consolidated Tennessee Bureau of Investigation (TBI) testified that he maintained the "breath alcohol instruments in the areas of East Tennessee." He stated that he came "once every three months" to test the instruments and "make sure they [were] working within the [TBI] standards." If the instrument was "working accurately," he issued a certificate for that instrument. He stated that "since 2000," he had been testing the instruments in Loudon County. Loudon County utilized the Intoximeter EC/IR-II at the time of the Defendant's arrest.

Relative to the instrument that was used with the Defendant, Agent Ferguson stated that he issued a certificate for that instrument on June 22, 2006, and in September 2006 after running a "wet bath standard" through the instrument. He stated that if a machine tested within .075 and .085, then no calibration was necessary. The Defendant's machine registered at .076 for the tests in June and September 2006. He stated that the machine had not needed repairs since it was put into service on October 25, 2005. In addition, he stated that these types of machines, including the machine used in the Defendant's case, had a "number of abort sequences built into it," meaning that the instrument would not perform the analysis if it was not "working 100 percent." Agent Ferguson stated that the mouthpieces used for testing the machine are supplied by TBI and that officers are instructed to use a new mouthpiece with each person.

On cross-examination, Agent Ferguson stated that Tennessee adopted the standards used to measure a person's breath alcohol content as they appeared in the federal register. He stated that while he could not testify as to the testing that was performed on the machine before the machine was sent to Tennessee, he performed the necessary tests on the machine in Loudon County. He admitted that he could not testify as to what mouthpiece Deputy Scarborough used on the Defendant, but he stated that he supplied the mouthpieces that were validated with the instruments. Agent Ferguson then described in detail how the Intoximeter EC/IR-II worked. He admitted that objects in a person's mouth would affect the reading on the machine, but he stated that officers are instructed to observe the person for 20 minutes before allowing them to blow into the machine. He stated that in order for the machine to work, a person would have to submit a deep breath and that if a person did not submit a deep breath, the machine monitor would display that it received an insufficient breath sample. He also stated that the machine had a built-in "RFI mute for radio frequency interference immunity" to prevent interference from radio frequencies. He said that if the temperature of the machine were out of range, then the instrument would not allow a test to be performed.

Deputy Scarborough testified consistently with his testimony at the preliminary hearing. Additionally, he stated that he was not familiar with the case of State v. Sensing, 843 S.W.2d 412 (Tenn. 1992) at the time of the preliminary hearing. He said that he had been trained on how to properly administer the intoximeter test when he tested the Defendant. He stated that he performed the test in accordance with the standards and procedures set forth in his certification class and that he was certified to administer the test. He stated that the machine appeared to be functioning properly and that it did not give him any trouble or reject the Defendant's breath sample. He stated that he observed the Defendant for the entirety of the 20-minute observation period and that the Defendant did not eat, drink, smoke, or have anything in his mouth.

On cross-examination, Deputy Scarborough testified that he performed the field sobriety tests on level pavement in the emergency lane. He admitted again that he did not have any field notes and that his encounter with the Defendant was not videotaped. He said that he could not recall specifics as to how the Defendant failed the field sobriety tests. He also said that the Defendant "had a smell of alcoholic beverage on his breath," was "a little unsteady on his feet," and had slurred speech. He admitted that he testified at the preliminary hearing that the Defendant also had "glassy eyes, glassy, bloodshot eyes" at the scene of the accident. He admitted that he did not check the Defendant's mouth for any objects. He stated that the Defendant did not appear to have anything in his mouth and that he observed him for the 20-minute observation period. He said that after the observation period, he told the Defendant to "take a deep breath and blow into the machine." He stated that it was his usual practice to tell people to take a deep breath and blow into the machine and that he did not have any reason to believe that he did not instruct the Defendant in the same manner. He

admitted that he did not testify at the preliminary hearing that he told the Defendant to take a deep breath before blowing into the machine. He stated that he used the mouthpiece that was supplied by the TBI and that the mouthpiece was individually wrapped inside a little box that was placed beside the machine. He admitted that at the preliminary hearing, he could not remember the individual steps that were provided in the written procedures promulgated by the TBI. At the conclusion of the hearing, the trial court overruled the Defendant's motion.

The Defendant entered a guilty plea and sought to reserve for appeal the certified question of whether the breathalyzer test "should have been suppressed following the hearing pursuant to the requirements by State v. Sensing, 843 S.W.2d 412 (Tenn. 1992)." The Defendant further noted that "if the [s]uppression motion had been granted, the State's case would have been proven weak in evidence to prosecute and that failure to suppress is dispositive to the [D]efendant's case." The judgment was filed on June 16, 2009, and the Defendant filed a notice of appeal on July 29, 2009.

ANALYSIS

The Defendant contends that the trial court erred in concluding that the breath alcohol test results were admissible when the State was unable to satisfy the Sensing requirements. The Defendant further contends that "[w]ithout the breath test, there is no persuasive evidence to indicate that the [D]efendant was driving under the influence." The State responds that the Defendant's case should be dismissed because the Defendant failed to file a timely notice of appeal. The State further responds that the appeal should also be dismissed because the Defendant's certified question is not dispositive of the case.

The State is correct in asserting that the notice of appeal was untimely. Pursuant to Tennessee Rule of Appellate Procedure 4(a), a notice of appeal "shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from[.]" The judgment in this case was filed on June 16, 2009; however, the notice of appeal was not filed until July 29, 2009, more than 30 days after the judgment was filed. We acknowledge that the untimely filing of a notice of appeal is not always fatal to an appeal. State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007). Rule 4(a) states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "'In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case.'" Rockwell, 280 S.W.3d at 214 (quoting State v. Markettus L. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005)). Waiver is not automatic and should only occur

when "the interest of justice" mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the 30 day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction. Id.

The Defendant's brief contains no explanation or discussion regarding the untimely filing of the notice of appeal. Moreover, the nature of the issues presented for review do not mandate waiver because the Defendant's certified question of law is not dispositive of his case. While the Defendant complied with the procedural requirements of Rule 37 of the Tennessee Rules of Criminal Procedure, our review of the record in this case indicates that resolution of the Defendant's issue in his favor would not dispose of the case when there was additional testimony that would have supported the Defendant's conviction of DUI. State v. Gregory W. Gurley, No. W2001-02253-CCA-R3-CD, 2002 WL 1841754, at *3 (Tenn. Crim. App. Aug. 6, 2002). Indeed, Deputy Scarborough testified that the Defendant smelled of alcohol, was unsteady on his feet, had slurred speech, admitting to consuming drinks with dinner, and was unable to perform satisfactorily on the field sobriety tests. While defense counsel notes that Deputy Scarborough's testimony was hindered by the fact that Deputy Scarborough did not take field notes or remember the explicit details of his interaction with the Defendant, we note that these issues relate to the weight of Deputy Scarborough's testimony and not to its admissibility. Accordingly, we conclude that the interest of justice does not mandate waiver of the untimely filing of the notice of appeal in this case. The Defendant's appeal is dismissed as untimely.

CONCLUSION

Having concluded that the interest of justice does not require a waiver of the timely filing of the notice of appeal, the appeal is dismissed.

_____
D. KELLY THOMAS, JR., JUDGE